UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-24663-CV-MARTINEZ
MAGISTRATE JUDGE REID

JUAN CARLOS PORTIELES,

      Petitioner,

v.

MARK S. INCH,[1]

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

The Petitioner, **JUAN CARLOS PORTIELES,** filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his convictions and sentences for first-degree murder, entered following a jury verdict in Miami-Dade County Circuit Court, Case No. F09-33588. [ECF 1]. For the reasons detailed below, the Petition should be denied.

This Cause has been referred to the undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Local Rule 1(e) governing

_____

[1] Pursuant to Fed. R. Civ. P. 25(d), because Mark S. Inch replaced Julie Jones as the Secretary of the Florida Department of Corrections, he is substituted as the proper respondent in this case.

Magistrate Judges; S.D. Fla. Admin. Order 2019-02; and the Rules Governing Habeas Corpus Petitions in the United States District Courts.

## II. Claims

Although the Petition was filed *pro se* [ECF 1], the Reply was drafted and filed by an attorney. [ECF 18]. Construing the arguments liberally, as afforded to *pro se* litigants under *Haines v. Kerner*, 404 U.S. 519, 520 (1972), Petitioner raised the following grounds for relief in the *pro se* Petition:

1.    Ineffective Assistance for not Retaining a Forensic Pathologist;

2.    Ineffective Assistance for not Protecting Confrontation Clause Rights;

3.    Ineffective Assistance for not Calling a Witness who Allegedly Drafted a "Cease and Desist" Letter;

4.    Ineffective Assistance for not Introducing the Victim's Text Messages and Telephone Log to Show the Existence of a Relationship;

5.    Ineffective Assistance for not Introducing the Victim's Text Messages and Telephone Log to Discredit the State's Timeline;

6.    The state violated *Brady*[2];

7.    The state violated *Giglio*[3] ;

---

[2] *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963) (holding a prosecutor's suppression of favorable evidence violates due process if that evidence is material to a defendant's guilt or punishment regardless of whether prosecutorial suppression was in good or bad faith).

[3] *Giglio v. United States*, 405 U.S. 150 (1972); *see also Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1276-77 (11th Cir. 2005) (explaining *Giglio* requires a showing that a "prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material.") (internal quotation marks omitted).

8.    Ineffective Assistance for not Calling Mr. Rolando Isla or Ms. Priscilla Perez to Testify;

9.    Ineffective Assistance for not Challenging Dr. Silver's Qualifications and Testimony;

10.    Ineffective Assistance for not Advising Petitioner to Plead Guilty to Second-Degree Murder Prior to the Superseding Indictment even though a Plea Offer was not Extended to Petitioner;

11.    Ineffective Assistance for not Using a Peremptory Challenge;

12.    Ineffective Assistance for not Requesting a Special Jury Instruction on Heat of Passion;

13.    Ineffective Assistance for Pursuing a "Do Nothing" Strategy;

14.    Ineffective Assistance for not Cross-Examining or Objecting to Mr. Torrealba's Testimony;

15.    Ineffective Assistance for Misadvising Petitioner on the Consequences of Testifying;

16.    Ineffective Assistance for not Presenting Mental Health Evidence to Corroborate a Heat of Passion Defense.

17.    Ineffective Assistance for not Filing a Motion to Suppress Petitioner's Statements to Law Enforcement;

18.    Ineffective Assistance for not Cross-Examining Ms. Isabelle Congote.

### III. Factual Background

3

Petitioner, Mr. Juan Carlos Portieles, worked as a DJ under the name DJ Seasunz. [ECF 12-1, p. 41]. Throughout the record, the attorneys and witnesses referred to him under both names.

In 2007, Mr. Pablo Torrealba discovered that his sixteen-year old daughter, Jaclyn Torrealba ("Jackie" or "the victim"), was dating Petitioner who was then twenty-eight years old. [ECF 12-6, pp. 63-64]. Because of his daughter's young age, Mr. Torrealba hired an attorney to send a cease and desist letter to Petitioner. [*Id.*]. Jackie was grounded and ordered to end the relationship. [*Id.* pp. 64-65]. Mr. Torrealba believed the relationship between the two had ended. [*Id.*]. In truth, Jackie and Petitioner continued their relationship until about the time she started school at Florida International University ("FIU"). [*Id.* pp. 99-101]. While attending FIU, Jackie's relationship with Petitioner continued "on and off." [*Id.*].

Just after midnight, on October 11, 2009, Jackie went to a club with Petitioner, Ms. Michelle Almeida, and Mr. Albert Lopez. [ECF 12-7, pp. 87-92]. At some point, Ms. Almeida and Mr. Lopez went to the restroom. [ECF 12-7, p. 94]. The victim signaled with her hands that she would wait on the dance floor. [*Id.*]. When Ms. Almeida returned, approximately fifteen minutes later, Petitioner and the victim were gone. [*Id.*].

Around 8:30 a.m., Petitioner repeatedly called Ms. Isabelle Congote and Mr. Gabriel Martinez's residence. [ECF 12-6, pp. 112-13]. Petitioner asked Ms. Congote

4

if he could come over to freshen up after an altercation at a club. [*Id.*]. When Petitioner arrived, according to Ms. Congote's testimony, Petitioner appeared tired, had a scratch on his face, and wore dirty clothes. [*Id.*].

Ms. Congote testified that she heard Petitioner admit to Mr. Martinez that the physical altercation mentioned previously was with Jackie. [*Id.* p. 115-16]. Ms. Congote recalled Petitioner expressing that he was concerned about the "consequences" of hitting Jackie, specifically the fear that Jackie would report him to law enforcement. [*Id.* pp. 116-17].

Ms. Congote also testified that Petitioner admitted to having a physical altercation with Jackie in his car. [*Id.*]. To stop Jackie from leaving the vehicle, according to Ms. Congote's memory of Petitioner's statements, Petitioner "strangled" Jackie. [*Id.*]. Ms. Congote remembered Petitioner saying, Jackie "fought very hard." [*Id.* pp. 118-19]. Upon Petitioner making this remark, Ms. Congote noticed Petitioner's smirk and swollen hands. [*Id.* p. 119].

Ms. Congote testified that Petitioner asked whether there were any known chop shops and whether he should burn the car. [*Id.* pp. 119-20]. He also asked to be taken to the Everglades. *Id.* Once Petitioner left her residence, Ms. Congote called 9-1-1. [*Id.* p. 122].

At 6:35 p.m., according to Officer Perez, Petitioner drove to Miami-Dade Midwest District Station and told the officer attending the front desk that he came to

turn himself in. [ECF 12-6, pp. 24-25]. Petitioner admitted his girlfriend was dead in the car. [*Id.*]. Law enforcement saw Jackie's corpse in the front passenger side seat. [*Id.* p. 31].

Detective Rolando De La Osa testified that Petitioner was read his *Miranda* rights and, as explained further in this Report, agreed to speak with law enforcement. [ECF 12-8 pp. 67-68]. Petitioner reported no recollection of where he went with Jackie or what had transpired between them. [*Id.* p. 74]. Petitioner told officers that he "blacks out" and things become a "blur" when he drinks. [*Id.* p. 77]. Petitioner, as he averred, woke up to Jackie's body in the car. [*Id.* pp. 77-79]. Petitioner admitted to driving aimlessly with Jackie's body in the vehicle. [*Id.*].

After a forty-minute break, according to Detective De La Osa's testimony, Petitioner was shown a photograph of Jackie and allegedly said, "there's no hiding it now." [ECF 12-8, p. 82]. Petitioner characterized Jackie as the aggressor—slapping and punching him—for no reason. [ECF 12-8, pp. 83-84]. In this volunteered version of events, Petitioner and Jackie argued, left Club Space, and entered Petitioner's vehicle, where Jackie gave Petitioner "the silent treatment." [*Id.*]. Petitioner appeared upset while describing Jackie's "silent treatment." [*Id.*]. Petitioner told police that he passed Jackie's exit, parked the vehicle by the Florida Turnpike in Kendall, and engaged in a physical altercation with Jackie. [*Id.* pp. 84-85]. More specifically, Petitioner admitted slapping, punching, biting, and choking

6

Jackie until she stopped moving. [*Id.*]. Detective De La Osa also testified that Petitioner took him to the location where he believes he parked the vehicle. [*Id.* pp. 95-96].

According to one expert, the bite marks on the victim's body indicated Petitioner was the "probable biter." [ECF 12-7, pp. 66-67]. The bite marks were also consistent with signs of an individual resisting or moving away to avoid being bitten. [*Id.*]. With respect to the other injuries, there were numerous abrasions and contusions around Jackie's face. [ECF 12-8, p. 19]. There were abrasions around her neck and on her nipple. [*Id.*]. Additional contusions were observed down the front side of the torso, the left and right sides of the abdomen, the buttocks, and all extremities. [*Id.* p. 20]. These injuries were concentrated on the right side of her body. [*Id.* pp. 20-21].

Generally, in a case of strangulation, victims lose consciousness within fifteen to twenty seconds, according to expert testimony. [*Id.* p. 33-34]. An individual could survive strangulation for that length of time. [*Id.*]. Brain damage could occur after about four minutes of strangulation. [*Id.*]. Death from strangulation could occur a "couple of minutes" beyond that approximate four-minute mark. [*Id.* pp. 34-35]. To kill by strangulation, the pressure must be "constant" and "relatively heavy." [*Id.* p. 35]. Through expert testimony, the jury learned that an individual could die of cardiac arrest while having their neck compressed and that it is impossible to know

how long Petitioner gripped the victim's neck. [*Id.* pp. 50-51]. Additionally, the jury heard from that same expert that cardiac arrest was unlikely due to the amount of hemorrhaging observed in Jackie's neck and her lack of heart disease. [*Id.* pp. 51-52].

## IV. Procedural Background

Petitioner was initially charged by Information with second-degree murder on November 2, 2009. [ECF 11, pp. 45-46]; [ECF 11-2, p. 48]. Later, on May 31, 2011, a grand jury indicted Petitioner for first-degree murder. [ECF 11-2, p. 76].

During opening statements and closing arguments, trial counsel argued in favor of the lesser included offense of manslaughter and expressed her view that Jackie's death occurred in the heat of passion requiring a conviction for manslaughter rather than first-degree murder. [ECF 12-6, p. 23]; [ECF 12-9, pp. 55-57].

The jury found Petitioner guilty of first-degree murder. [ECF 11-2, p. 79]. The trial court entered its judgment adjudicating Petitioner guilty of first-degree murder and sentenced him to life imprisonment. [*Id.* pp. 81-83, 85-86]. Petitioner appealed. [*Id.* p. 88].

On direct appeal, Petitioner argued that the trial judge erred in denying a motion for mistrial after the state allegedly left the jury with an impression that Petitioner committed uncharged crimes against the victim prior to the charged

offense. [*Id.* pp. 90-111]. On February 5, 2014, the Third District Court of Appeal

*per curiam* affirmed the judgment and sentence. [*Id.* p. 135].

In a represented Rule 3.850 Motion to Vacate, Petitioner claimed:

> I. Trial counsel was constitutionally ineffective for not retaining a forensic pathologist when the main trial issues were the cause of death and whether the act was premeditated or otherwise done in the heat of passion;

> II. Trial counsel was constitutionally ineffective for failure to challenge the State's pathologist by not objecting and preserving Petitioner's Confrontation Clause right;

> III. Trial counsel was constitutionally ineffective for failing to call the attorney who wrote the cease and desist letter as a trial witness, which would have discredited the State's theory of premeditation;

> IV. Trial counsel was constitutionally ineffective for failing to introduce text messages and the victim's telephone log into evidence to support a heat of passion defense;

> V. Trial counsel was constitutionally ineffective for not using text messages to disprove the State's timeline of events;

> VI. *Brady* violations;

> VII. *Giglio* violations;

> VIII. Trial counsel was constitutionally ineffective for failing to call Mr. Roland Barrios to demonstrate that he was in a romantic relationship with the victim to support a heat of passion defense;

> IX. Trial counsel was constitutionally ineffective for not meaningfully challenging Dr. Silver's qualifications and testimony;

X. Trial counsel was constitutionally ineffective for failing to call exculpatory witnesses who were available and for failing to admit text messages between the victim and Mr. Barrios;

XI. Trial counsel was constitutionally ineffective for not filing a motion to suppress Petitioner's custodial statements to the police;

XII. Trial counsel was constitutionally ineffective for failing to advise Petitioner of the option of pleading openly to the Court in hopes of receiving a mitigated sentence;

XIII. Trial counsel was constitutionally ineffective for failing to seek a special heat of passion jury instruction;

XIV. Trial counsel was constitutionally ineffective for failing to challenge or object to Mr. Torrealba's irrelevant testimony at trial;

XV. Trial counsel was constitutionally ineffective for failing to cross examine Ms. Isabel Coyaote (sic);

XVI. Trial counsel was constitutionally ineffective for misadvising Petitioner on his right to testify;

XVII. Trial counsel was constitutionally ineffective for failing to present mental health evidence to corroborate the heat of passion defense.

[ECF 11-3]. Following an evidentiary hearing, the trial court entered an order

denying Petitioner's Rule 3.850 motion on February 23, 2016. [ECF 11-5, pp. 2-16].

Petitioner filed an appeal challenging the resolution of some of those claims.

[*Id.* pp. 61-100]. Florida's Third District Court of Appeal *per curiam* affirmed. [*Id.*

p. 157]. Rehearing was denied on December 21, 2017. [ECF 11-5, p. 164]. The

mandate was entered on January 8, 2018. [ECF 11-5, p. 166]. The Petition was filed during the pendency of that appeal. [ECF 1].

## V. Timeliness

Put broadly, petitioners have a one-year period from the date a judgment becomes "final" to file a federal habeas petition challenging a state court conviction or sentence. 28 U.S.C. § 2244(d). Here, further analysis on the issue of timeliness of the petition is unnecessary because the parties correctly do not dispute timeliness.

## VI. Exhaustion

When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 bars review of those claims in federal court. *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (relying upon 28 U.S.C. § 2254(b)-(c)). To properly exhaust one's claims, the claim must have been "fairly" presented to the state appellate courts and postconviction courts. *Mason*, 605 F.3d at 1119. Additionally, both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. *Baldwin v. Reese*, 541 U.S. 27 (2004).

"It is not sufficient merely that the federal habeas petitioner has been through the state courts...nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made."

*Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275-276 (1971) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

A petitioner is required to present his claims to the state courts such that the courts have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." *Picard v. Connor*, 404 U.S. at 275-277. To satisfy this requirement, "[a] petitioner must alert state courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his federal rights." *Jimenez v. Fla. Dep't. of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

"A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin*, 541 U.S. at 32. To circumvent the exhaustion requirement, Petitioner must establish that there is an "absence of available State corrective process" or that circumstances exist that render "such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). Such a showing has not been made.

Failure to exhaust a claim can result in a procedural default bar in federal court if it is obvious that the unexhausted claim would now be procedurally barred in state

12

court. *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). When claims are procedurally barred, the claim is denied. *See Zeigler v. Crosby*, 345 F.3d 1300, 1308 (11th Cir. 2003). If exhaustion is still possible in state court, a federal habeas petition is dismissed pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982) to provide an opportunity to exhaust. As such, federal courts must determine whether any future attempts at exhausting state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.

Under special circumstances, which are not applicable to this case but shall be addressed later in this Report, federal courts may excuse a petitioner's procedural default.

A. *Brady*

In ground six, Petitioner contends that three separate *Brady* violations transpired. [ECF 1, p. 32]. The first is a July 19, 2012 email from the victim's father to the state attorney. The second involves a July 20, 2012 email to the state attorney. The third refers to a cease and desist letter, which Petitioner asserts was never sent to him.

The represented Rule 3.850 motion before the state circuit court contains these claims. [ECF 11-3, pp. 42-43]. However, Petitioner's appellate brief appealing the denial of these claims makes no reference to them or to *Brady*. [ECF 11-5, pp. 61-100]. The claims are, therefore, unexhausted. *See Baldwin*, 541 U.S. at 32.

B. *Giglio*

In ground seven, Petitioner contends that there was at least one *Giglio* violation stemming from withheld information referenced in the *Brady* claim. [ECF 1, pp. 33-36]. This *Giglio* claim was raised in the represented Rule 3.850 motion. [ECF 11-3, pp. 43-47]. Petitioner's appellate brief appealing the denial of this claim makes no reference to *Giglio*. [ECF 11-5, pp. 61-100]. Any claims relying upon *Giglio* are, therefore, unexhausted. *See Baldwin*, 541 U.S. at 32.

C. Ineffective Assistance of Trial Counsel—Dr. Silver's Qualifications

In ground nine, Petitioner contends that trial counsel was ineffective for not challenging Dr. Silver's qualifications and testimony for a variety of reasons. [ECF 1, pp. 39-40]. This claim was raised in the represented Rule 3.850 motion. [ECF 11-3, pp. 48-49]. On appeal, Petitioner made no reference—let alone any argument—on the subject of Dr. Silver's qualifications or testimony. [ECF 11-5, pp. 61-100]. Thus, because the Third District Court of Appeal was not fairly presented with the facts to address the ineffective-assistance claim, this claim is unexhausted. *See Baldwin*, 541 U.S. at 32.

D. Ineffective Assistance of Trial Counsel—Failure to Use Peremptory Challenge

Petitioner contends that trial counsel was ineffective for failing to use a peremptory challenge against a witness whose brother was a prosecutor for the State Attorney's Office in Miami-Dade County. [ECF 1, pp. 40-41].

The claim was raised in the represented Rule 3.850 motion. [ECF 11-3, pp. 53-54]. On appeal, there was no argument regarding the peremptory challenge. [ECF 11-5, pp. 61-100].  As such, the claim is unexhausted. *See Baldwin*, 541 U.S. at 32.

E. Ineffective Assistance of Trial Counsel—Counsel's "Do Nothing" Strategy

Petitioner contends that trial counsel was ineffective for pursuing a "Do Nothing" strategy by not countering medical evidence or the State's premeditation theory with their own witnesses. [ECF 1, p. 42]. The Rule 3.850 motion explicitly raised this argument. [ECF 11-3, p. 55]. It does not appear this claim was fairly presented to the Third District Court of Appeal. [ECF 11-5, pp. 61-100]. Thus, the claim is unexhausted. *See Baldwin*, 541 U.S. at 32.

F. Ineffective Assistance of Trial Counsel—Mr. Torrealba's Testimony

Petitioner claims that trial counsel was ineffective because the victim's father, Mr. Torrealba, was not cross-examined on what Petitioner asserts was irrelevant testimony designed to elicit sympathy from the jury. [ECF 1, p. 42].

This claim was raised in the represented Rule 3.850 motion. [ECF 11-3, p. 55]. On appeal, Counsel for Petitioner did not fairly present a federal claim related to Mr. Torrealba's testimony. [ECF 11-5, pp. 61-100]. The claim is, therefore, unexhausted. *See Baldwin*, 541 U.S. at 32.

G. Ineffective Assistance of Trial Counsel—Misadvise on Testifying

In ground fifteen, Petitioner claims trial counsel was ineffective for telling him that his testimony would only hurt his case and that the State had already failed to prove premeditation. [ECF 1, p. 42-43]. Petitioner asserts that he felt his testimony was necessary to counter the premeditation theory and support a heat of passion defense. [*Id.*]. Had trial counsel not told him that his testimony would hurt his case, Petitioner avers he would have testified. [*Id.*]. This claim was raised in the represented Rule 3.850 motion. [ECF 11-3, p. 56].

On appeal, the allegations of this claim substantially varied from that raised before the state circuit court or in the instant Petition. [ECF 1, p. 42-43]; [ECF 11-5, pp. 81-82]. Before the Third District Court of Appeal, Counsel for Petitioner wrote that Petitioner was erroneously informed that the jury would learn of Petitioner's prior arrests even though he did not have any felony convictions. [ECF 11-5, pp. 81-82]. But for this advice, as Counsel for Petitioner argued, Petitioner would have testified. [*Id.*]. Worth mentioning, Petitioner's Reply relies upon the factual basis raised in the Third District Court of Appeal [ECF 18, p. 12], not the theory raised in the state circuit court or in the Petition.

Plainly, the theory raised in the Third District Court of Appeal was not the same as that raised in the Rule 3.850 motion or in the instant Petition. Because Counsel for Petitioner raised a new factual basis for the claim in the Third District Court of Appeal, the theory raised in the Rule 3.850 motion (*i.e.*, being told his

16

testimony would only hurt his case and that the state had not proven premeditation) was not fairly presented on appeal. *See Baldwin*, 541 U.S. at 32.

Similarly, the factual basis relying upon Petitioner's previous arrests as the subject discouraging Petitioner to testify was not properly preserved for federal habeas review because that argument was raised only on appeal. *See Baldwin*, 541 U.S. at 32.

The two separate theories were not properly exhausted through the state courts, *see Bailey*, 172 F.3d at 1302-03, even though they both relate to a claim of misadvise of a defendant's right to testify. The two theories for this claim are, therefore, unexhausted.

## H. Ineffective Assistance of Trial Counsel—Heat of Passion and Mental Health

Petitioner contends that trial counsel was ineffective for not presenting mental health evidence to corroborate a heat of passion defense. [ECF 1, p. 43]. The claim was raised in the represented Rule 3.850 motion. [ECF 11-3, pp. 56-57].

On appeal, this argument was not raised [ECF 11-5, p. 61-100], rendering the claim unexhausted. *See Baldwin*, 541 U.S. at 32. Petitioner cannot return to the state courts to raise this claim because it would be deemed successive or an untimely appeal. *See Bailey*, 172 F.3d at 1302-03. This claim is, therefore, procedurally barred precluding federal habeas review unless an exception applies. *See id.*

## I. The Unexhausted Claims are Procedurally Defaulted

As a reminder, federal courts must determine whether any future attempts at exhausting state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.

In Florida, exhaustion is ordinarily accomplished on direct appeal.  If not, it may be accomplished by filing a Rule 3.850 motion and an appeal from its denial, *Leonard*, 601 F.2d at 808, or, in the case of a challenge to a sentence, by filing a Rule 3.800 motion and an appeal from its denial. *See Caraballo v. State*, 805 So.2d 882 (Fla. 2d DCA 2001). However, ineffective assistance of trial counsel claims are generally not reviewable on direct appeal but are properly raised in a motion for postconviction relief.  *See Kelley v. State*, 486 So.2d 578, 585 (Fla. 1986).

The represented Rule 3.850 motion before the state circuit court contains almost all of the previously mentioned unexhausted claims. [ECF 11-3, pp. 42-57]. Specifically, grounds six, seven, nine, eleven, thirteen, fourteen, and sixteen. Although Petitioner appealed [ECF 11-5, pp. 61-100], he did not fairly present those issues on appeal. *See Baldwin*, 541 U.S. at 32. Similarly, the misadvise of the right to testify claim in the Rule 3.850 motion was not raised on appeal.

Pursuant to Fla. R. Crim. P. 3.850(h), state courts may summarily dismiss claims that were or could have been raised in a prior Rule 3.850 motion. Additionally, a notice of appeal on a final order denying a motion for postconviction relief must be filed within thirty days from rendition of the order. Fla. R. Crim. P.

18

3.850(k). Finally, because Counsel for Petitioner already appealed, Petitioner cannot qualify for a belated appeal to raise the previously mentioned claims. *See* Fla. R. Crim. P. 3.850(i); Fla. R. App. Proc. 9.141(c)(5)(A).

In sum, because all of the previously mentioned unexhausted claims would either be successive in the state circuit court or an untimely appeal in Florida's state courts, there is no longer a procedural avenue for these claims in state court. *See Bailey*, 172 F.3d at 1302-03.

One matter warrants further discussion. The ineffective-assistance claim for the alleged misadvise on the ability to testify raised in the Third District Court of Appeal was not raised in the Rule 3.850 Motion as addressed earlier. Because Petitioner could have done so at the appropriate time, such a claim would be deemed successive in the state circuit court. *See* Fla. R. Crim. P. 3.850(h).

Absent an equitable exception, the claims are procedurally barred and should be denied. *See Bailey*, 172 F.3d at 132-03. *See also Zeigler*, 345 F.3d at 1308 (denying procedurally defaulted claims).

J. <u>Equitable Exceptions to Procedural Default</u>

*i. Cause and Prejudice*

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." *Jones v. Campbell*, 436 F.3d 1285, 1304 (11th Cir. 2006). *See also Maples*

*v. Thomas*, 565 U.S. 266, 280 (2012) (relying upon *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

### ii. *"Fundamental Miscarriage of Justice" or Actual Innocence*

"If a petitioner cannot show cause, he may still survive a procedural bar by proving that the failure to hear the merits of his claim would endorse a fundamental miscarriage of justice." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (relying upon *Murray*, 477 U.S. at 495). Under this miscarriage-of-justice exception, "actual innocence, if proved, serves as a gateway through which a [§ 2254] petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (relying upon *House v. Bell*, 547 U.S. 518 (2006) and *Schlup v. Delo*, 513 U.S. 298 (1995)).

### iii. *Inapplicability of Equitable Exceptions*

Petitioner and his Counsel provide no argument to explain why the procedural default of certain claims should be excused. Thus, Petitioner has not shown cause and prejudice. Further, there are no assertions of actual innocence. Rather, as evidenced by Petitioner's arguments, he asserts that he is legally innocent of the convicted offense and guilty of a lesser included offense.

Without an applicable equitable exception, this Court cannot excuse the procedural default of the unexhausted claims. Based on the foregoing, the following claims are procedurally barred from federal habeas review:

20

1.      Ground Six: The *Brady* Claims;

2.      Ground Seven: The *Giglio* Claim;

3.      Ground Nine: Ineffective Assistance for not
Challenging Dr. Silver's Qualifications and
Testimony;

4.      Ground Eleven: Ineffective Assistance for not
Using a Peremptory Challenge;

5.      Ground Thirteen: Ineffective Assistance for
Pursuing a "Do Nothing" Strategy;

6.      Ground Fourteen: Ineffective Assistance for not
Cross-Examining or Objecting to Mr. Torrealba's
Testimony;

7.      Ground Fifteen: Ineffective Assistance for
Misadvising Petitioner on the Consequences of
Testifying;

8.      Ground Sixteen: Ineffective Assistance for not
Presenting Mental Health Evidence to Corroborate
a Heat of Passion Defense.

Accordingly, the following claims, as Respondent correctly concedes, are

exhausted and shall be addressed on the merits:

1.      Ground One: Ineffective Assistance for not
Retaining a Forensic Pathologist;

2.      Ground Two: Ineffective Assistance for not
Protecting Confrontation Clause Rights;

3.      Ground Three: Ineffective Assistance for not
Calling a Witness who Allegedly Drafted a "Cease
and Desist" Letter;

4.      Ground Four: Ineffective Assistance for not
Introducing the Victim's Text Messages and

Telephone Log to Show the Existence of a Relationship;

5.   Ground Five: Ineffective Assistance for not Introducing the Victim's Text Messages and Telephone Log to Discredit the State's Timeline;

6.   Ground Eight: Ineffective Assistance for not Calling Mr. Rolando Isla or Ms. Priscilla Perez to Testify;

7.   Ground Ten: Ineffective Assistance for not Advising Petitioner to Plead Guilty to Second-Degree Murder Prior to the Superseding Indictment even though a Plea Offer was not Extended to Petitioner;

8.   Ground Twelve: Ineffective Assistance for not Requesting a Special Jury Instruction on Heat of Passion;

9.   Ground Seventeen: Ineffective Assistance for not Filing a Motion to Suppress Petitioner's Statements to Law Enforcement;

10.  Ground Eighteen: Ineffective Assistance for not Cross-Examining Ms. Isabelle Congote.

## VII. Standard of Review

This Court's review of Petitioner's claim is circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996). *See Abdul–Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Ledford v. Warden, Ga. Diagnostic & Classification*

22

*Prison*, 818 F. 3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)) (quotation marks omitted)). This purpose, and by implication AEDPA, is consistent with the foundational principle of our federalist system of government: "State courts are adequate forums for the vindication of federal rights." *See Burt v. Titlow*, 571 U.S. 12, 20 (2013).

Several limits exist on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The most restrictive limit is that found in § 2254(d). As amended by the AEDPA, pursuant to § 2254(d), a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits of the issue was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). AEDPA's deferential standard under § 2254(d) applies only whenever state court proceedings adjudicated a claim on the merits. *See Cullen*, 563 U.S. at 181. "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Burt*, 571 U.S. at 20 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

To qualify as an adjudication on the merits, very little is required. In fact, federal courts should presume that § 2254(d)'s deference applies. *See, e.g.*, *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Even where there was a summary denial and no reasons for the denial of relief were articulated by the state trial court, such a ruling is also presumed to be an adjudication on the merits. *Id.* at 100. *See also Gill v. Mecusker*, 633 F. 3d 1272, 1288-89 (11th Cir. 2011) (acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference).

"The presumption [in favor of a merits ruling existing] may be overcome" only "when there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 562 U.S. at 99-100 (relying upon *Ylst v. Nunnemarker*, 501 U.S. 797, 803 (1991).

Recently, in *Wilson v. Sellers*, 138 S. Ct. 1188, 1192-94 (2018), the Supreme Court held there is a "look through" presumption in federal habeas corpus law, as silence implies consent. This means federal courts should rely upon the "last related state-court decision" that provides a relevant rationale when the highest state court's adjudication on the merits of a claim is unaccompanied by an explanation. Put into

24

practice, *Wilson* clarifies which state court's reasoning is presumptively afforded §

2254(d)'s deference.

Federal courts must presume that factual determinations made by a state court

are correct. *Morrow v. Warden*, 886 F. 3d 1138, 1147 (11th Cir. 2018) (relying upon

§ 2254(e)). A habeas petitioner has the burden of rebutting this presumption of

correctness by clear and convincing evidence. *Morrow*, 886 F. 3d at 1147 (relying

upon § 2254(e)).

When it is unclear whether § 2254(d)'s additional restriction applies, federal

courts may also deny writs of habeas corpus under § 2254 by engaging in *de novo*

review, a more favorable standard, as a habeas petitioner would surely not be entitled

to a writ under § 2254(d) if their claim would fail under *de novo* review. *Berghuis v.*

*Thompkins*, 560 U.S. 370, 390 (2010). *See also Trepal v. Sec'y, Fla. Dep't of Corr.*,

684 F.3d 1088, 1109-10 (11th Cir. 2012) ("We need not resolve the question of the

proper standard of deference to the Florida Supreme Court's adjudication...Instead,

we adopt an approach the United States Supreme Court itself has employed when a

petitioner fails to show prejudice even under *de novo* review[.]"); *Hittson v. GDCP*

*Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) ("Such a showing is not enough to

establish ineffectiveness under a *de novo* application of *Strickland*—much less

justification for upsetting the Georgia high court's decision under § 2254(d)(1).").

## VIII. Applicable Underlying Law

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Id.* at 689. The presumption of counsel's adequate performance wields "particular force where" the ineffective-assistance claim is based "solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'" *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)). Importantly, the deference afforded to trial counsel's performance is doubly so when a Petitioner raises an ineffective-assistance claim under § 2254(d). *Rutherford v. Crosby*, 385

F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference-this one to a state court's decision-when we are considering whether to grant federal habeas relief from a state court's decision.").

To demonstrate prejudice, petitioners must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A probability that is reasonable is defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

If a petitioner cannot meet one of *Strickland*'s prongs, a court need not address the other prong.  *See, e.g.*, *Dingle v. Sec'y, Fla. Dep't of Corr.*, 480 F.3d 1092, 1100 (11th Cir. 2007) (relying upon *Strickland*, 466 U.S. at 697).

## IX. Discussion

A. <u>Ground One</u>

In ground one, Petitioner contends that trial counsel was ineffective for failure to retain a forensic pathologist to challenge the cause of death. [ECF 1, p. 6-10]. Essentially, Petitioner argues that trial counsel should have done more than cross-examine the State's witness to show that the cause of death could have been a heart attack, not strangulation. [*Id.*]. Had the jury considered Jackie's death may have been

cardiac arrest, as he argues, it would have reflected on the length of time Petitioner had to reflect on his actions. [*Id.*].

In denying this claim, the state circuit court explained that the jury learned, through defense counsel's cross-examination, that it was not possible to determine how long strangulation occurred and that a heart attack could not be ruled out as a cause of death. [ECF 11-5, pp. 3-4]. The transcripts corroborate this conclusion. [ECF 12-8, pp. 50-52].

Because the jury already learned that it is impossible to know how long Petitioner gripped the victim's neck and that a heart attack was possible, additional expert testimony would have been duplicative. Although the jury learned that this expert believed cardiac arrest was unlikely [*id.*], the jury was free to give whatever weight it wanted to that expert testimony. [ECF 12-9, pp. 74-75] ("Like other witnesses, you may believe or disbelieve all or any part of an expert's testimony.").

Therefore, as Petitioner cannot show prejudice even under *de novo* review, *see Strickland*, 466 U.S. at 694, he cannot satisfy § 2254(d). *See Trepal*, 684 F.3d at 1109-10. There is no need for this Court to address the deficiency prong. *See Dingle*, 480 F.3d at 1100.

B. Ground Two

In ground two, Petitioner contends that trial counsel was ineffective for not protecting his rights under the Confrontation Clause. [ECF 1, pp. 10-11]. In support,

Petitioner asserts that Dr. Gillepsie only supervised the trainee who performed an autopsy, rendering Dr. Gillepsie's testimony not based on facts known to him and interfering with Petitioner's ability to confront the autopsy reports used against him. [*Id.*].

This claim was denied on the merits at the state circuit court level. [ECF 11-5, pp. 4-5]. It was then affirmed by the Third District Court of Appeal without a reasoned opinion [ECF 11-5, p. 157], rendering the state circuit court's reasoning as the presumed reasoning of the highest state court. *See Wilson*, 138 S. Ct. at 1192-94. Consequently, § 2254(d)'s deferential standard applies.

The state circuit court concluded that it was "pure speculation" that the uncalled trainee would have testified to facts favorable to Petitioner. [ECF 11-5, pp. 4-5]. Additionally, the state circuit court relied on the fact that two associate medical examiners performed the autopsy, one as the medical examiner and the other as the supervisor (*i.e.*, Dr. Gillepsie). [*Id.*].

At trial, Dr. Gillepsie clarified what his role as a supervisor entailed. He explained that he was in the room "next to" the medical doctor performing the autopsy and saw all injuries or natural diseases that were observed and documented by the doctor actually performing the autopsy. [ECF 12-8, pp. 14-15]. He testified to his observations and opinions because the medical doctor performing the autopsy

was a fellow learning within the context of a teaching facility program. [*Id.* pp. 15-16].

Because Dr. Gillepsie, who was cross-examined, personally observed the autopsy and participated in the autopsy's findings, Petitioner cannot show his Confrontation Clause rights were implicated. *See United States v. Ignasiak*, 667 F.3d 1217, 1231 (11th Cir. 2012) (applying *Crawford* and its progeny to autopsy reports, where testifying doctor did not personally observe or participate in autopsy thereby violating the Confrontation Clause). *See also Crawford v. Washington*, 541 U.S. 36, 68-69 (2004) (explaining that the Confrontation Clause requires that testimonial hearsay against a criminal defendant must be subject to cross-examination at trial or, if the declarant is unavailable, there was a prior opportunity to cross-examine).

Therefore, because Petitioner has not shown prejudice under *de novo* review, he cannot satisfy § 2254(d). *See Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739, 755 (11th Cir. 2011) ("Because counsel cannot be labeled ineffective for failing to raise issues which have no merit, we affirm the district court's determination that [§ 2254(d) cannot be met].") (internal quotations, citations, and alterations omitted). Finally, there is no need for this Court to address the deficiency prong. *See Dingle*, 480 F.3d at 1100.

C. <u>Ground Three</u>

30

In ground three, Petitioner contends that trial counsel was ineffective for failing to call the attorney who drafted the cease and desist letter. [ECF 1, pp. 12-16]. Had trial counsel done so, as Petitioner argues, it would have undermined the State's theory that he killed the victim because he did not want to face the legal consequences of having had an underage girlfriend for two years. [ECF 1, pp. 12-13]. Petitioner asserts that such testimony would have shown he never received the cease and desist letter. [*Id.*].

In denying this claim, the state circuit court deemed it "merely conclusory" because Petitioner "cannot, and frankly did not assert, that the witness in question had any knowledge about whether [Petitioner] received the letter[.]" [ECF 11-5, pp. 5-6].

This claim could be denied even under *de novo* review. *See Trepal*, 684 F.3d at 1109-10. The jury learned from several witnesses that Petitioner expressed his concern about the consequences associated with striking the victim, providing enough justification for premeditation. Additionally, the jury learned that Petitioner, after being upset about the victim's refusal to speak to him, passed the victim's exit and did not allow her out of the vehicle. This also would have permitted an inference of premeditation. A reasonable probability of a different outcome, therefore, could not be established. *See Strickland*, 466 U.S. at 694. Because Petitioner cannot show prejudice under *de novo* review, he certainly cannot satisfy § 2254(d). *See Cave*, 638

F.3d at 755. The deficiency prong need not be addressed. *See Dingle*, 480 F.3d at 1100.

D. Ground Four

In ground four, Petitioner argued that trial counsel was ineffective for failing to introduce the victim's text messages and telephone log to demonstrate that Petitioner and the victim were in a relationship. [ECF 1, p. 16]. Had trial counsel done so, as Petitioner submits, it would have supported a heat of passion defense. [*Id.*].

This claim was denied on the merits at the state circuit court level. [ECF 11-5, pp. 6-7]. It was then affirmed by the Third District Court of Appeal without a reasoned opinion [ECF 11-5, p. 157], meaning the state circuit court's reasoning is its presumed reasoning. *See Wilson*, 138 S. Ct. at 1192-94. Consequently, § 2254(d)'s deferential standard applies.

In denying this claim, the state circuit court reasoned that none of the text messages illuminated what happened in the vehicle at the time the victim was killed. [ECF 11-5, pp. 6-7]. Under Florida law, "there must be adequate provocation as might obscure the reason or dominate the volition of an ordinary reasonable man" to qualify under the heat of passion defense. *See, e.g.*, *Paz v. State*, 777 So. 2d 983, 984 (Fla. 3d DCA 2000). Adequate provocation typically applies when the victim

32

endured injuries or death immediately after the defendant learned or experienced the provoking information. *See id.*

As the text messages do not clarify what transpired between Petitioner and the victim immediately before or during the altercation, adequate provocation could not be established under Florida law. *See id.* Because the state courts' prejudice analysis was not contrary to or an unreasonable application of clearly established federal law, this claim must be denied. The deficiency prong need not be addressed. *See Dingle*, 480 F.3d at 1100.

E. Ground Five

In ground five, Petitioner contends that trial counsel was ineffective for not using text messages to disprove the State's timeline. [ECF 1, pp. 29-31]. According to Petitioner, the State maintained that the last time the victim contacted her father was at 3:00 a.m., which was the time the victim and Petitioner left the club. [ECF 1, p. 29]. The victim's text message history shows a text message was sent from her phone at 4:18 a.m., saying that the victim was still at the club, and indicates text messages were sent to two other persons that evening. [*Id.*]. In denying this claim, the state circuit court stated that "no prejudice was alleged or is apparent from the record." [ECF 11-5, p. 7].

As to this claim, this Court need not settle whether § 2254(d) applies because the claim can be denied under *de novo* review. *See Trepal*, 684 F.3d at 1109-10.

33

Petitioner does not dispute that he left with the victim and placed his hands around her neck in his vehicle. Consequently, whether the victim left the club at approximately 3:00 a.m. or later that morning with Petitioner appears immaterial. Because counsel cannot be ineffective for raising futile issues, *see Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009), Petitioner could not satisfy § 2254(d). *See Cave*, 638 F.3d at 755 (concluding that failure to show prejudice under *de novo* review demonstrates that § 2254(d) is not met either).

F. <u>Ground Eight</u>

In ground eight, Petitioner contends trial counsel was ineffective for not calling Mr. Rolando Isla Barrios and Ms. Priscilla Perez as witnesses. [ECF 1, pp. 36-39]. As he alleges, Petitioner learned the victim was dating Mr. Barrios while he was in the vehicle with the victim, which allegedly triggered his "jealous rage." [ECF 1, p. 36]. He also adds that Mr. Barrios could have been the source of bite marks on the victim's body because Mr. Barrios and the victim were dating. Ms. Perez's testimony would have allegedly corroborated that the victim expected to meet with Mr. Barrios at her house. [*Id.* p. 38]. Petitioner argues that their testimony would have supported a heat of passion defense. [*Id.* p. 36]. In the Reply, he refers to this as his manslaughter defense. [ECF 18, p. 15].

This claim was denied on the merits in the state circuit court. [ECF 11-5, pp. 6-7]. The Third District Court of Appeal affirmed without a reasoned opinion [ECF

11-5, p. 157], making the state circuit court's reasoning the appellate court's presumed reasoning. *See Wilson*, 138 S. Ct. at 1192-94. Consequently, § 2254(d)'s deferential standard applies.

In denying this claim, the state circuit deemed the notion that Mr. Barrios left marks on the victim's body "conclusory" and viewed Ms. Perez's testimony as irrelevant. [ECF 11-5, pp. 6-7].

Axiomatically, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] seldom, if ever second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

With respect to deficiency, it cannot be met. Here, Petitioner did not adequately address why trial counsel's decision to not call Mr. Barrios or Ms. Perez after previously deposing them (ECF 1, p. 38], was not the result of a formed, reasonable strategic decision. *See Strickland*, 466 U.S. at 689-90 (explaining that significant decisions are presumed to be "in the exercise of reasonable professional judgment" and are "virtually unchallengeable" unless that the act or omission was "outside the wide range of professionally competent assistance").

This claim also fails on the issue of prejudice. With respect to the marks on the victim's body, the jury already knew that Petitioner had a physical altercation with the victim, and Petitioner was the "probable biter." [ECF 12-7, pp. 66-67]. Additionally, neither of the proposed witnesses could have testified as to whether

Petitioner learned of the victim's relationship with Mr. Barrios or any other person immediately prior to the attack. Therefore, because these witnesses were not alleged to know about Petitioner learning of the victim's relationships with other men, the state court's decision was not contrary to or an unreasonable application of clearly established federal law. *See, e.g.*, *Boyd v. Comm'r, Alabama Dep't of Corr.*, 697 F.3d 1320, 1333 (11th Cir. 2012) (holding conclusory or facially deficient allegations did not satisfy deficiency or prejudice prongs before the state court, meaning Petitioner did not satisfy the standard set forth in § 2254(d)).

G. Ground Ten

In ground ten, Petitioner claims trial counsel was ineffective for failing to advise Petitioner to plead guilty to second-degree murder prior to the superseding indictment's first-degree murder charge. [ECF 1, p. 40]. Petitioner acknowledges there was no plea deal available but asserts he would have made an open plea had he been advised of this option. [*Id.*].

Respondent points out that there is "no record evidence that defense counsel was aware that the grand jury was going to return an indictment for first-degree murder[,]" indicating that trial counsel's performance was adequate under the circumstances. [ECF 11, pp. 46-47].

This Court need not resolve the appropriate standard of review on this claim because the claim can be denied on *de novo* review. *See Trepal*, 684 F.3d at 1109-

36

10. In *Hill v. Lockhart*, the U.S. Supreme Court held that *Strickland* applies to decisions regarding guilty plea discussions. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). *See also Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012) (explaining *Hill* applies both to the improvident acceptance of a plea deal and to the rejection of plea deals). In light of *Hill*, the prejudice prong inquires whether counsel's performance affected the outcome of the plea process, meaning a less onerous sentence would have been imposed. *See id.* at 58-59.

As an initial matter, *Hill* and *Lafler* apply when plea deals exist, and Petitioner conceded there was no plea offer. Further, Counsel for Petitioner has not alerted this Court to the existence of any Supreme Court case or Eleventh Circuit case requiring trial counsel to always advise clients of their option of making an open guilty plea.

This Court should remember that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission was unreasonable." *Strickland*, 466 U.S. at 689. Thus, this Court must not review trial counsel's performance through the distorting lens of hindsight but from the perspective of counsel at that time. *Id.*

Assuming trial counsel did not advise Petitioner of the option of making an open guilty plea, there is no evidence in the record that trial counsel—or even Petitioner—knew State prosecutors intended on pursing higher charges before a grand jury. In fact, Counsel for Petitioner failed to allege that Petitioner or trial

37

counsel knew grand jury proceedings would be pursued. [ECF 11-3, pp. 53-54]; [ECF 11-4, p. 310]. Respondent argued this issue in its Response. [ECF 11, pp. 46-47]. And yet, the *pro se* Petition and the represented Reply do not address the argument.

Here, Petitioner cannot overcome the presumption of trial counsel's adequate performance, as trial counsel could not have fairly predicted that pursuing an open plea to second-degree murder was urgent or a reasonable strategy without any allegations that trial counsel knew that grand jury proceedings were being pursued. *See, e.g.*, *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("Because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). This Court need not address prejudice. *See Dingle*, 480 F.3d at 1100.

H. Ground Twelve

In ground twelve, Petitioner claims that his trial counsel was ineffective for failing to request a special jury instruction on heat of passion. [ECF 1, p. 41]. Respondent argues that Petitioner received the standard jury instruction addressing justifiable homicide, which contains the heat of passion defense. [ECF 11, pp. 52-53]. The lack of a special jury instruction, as Respondent argues, does not render trial counsel ineffective. [ECF 11, p. 53].

38

This claim necessarily requires some discussion on state law. Under Florida law, criminal defendants are entitled to special jury instructions only if (1) the special instruction is supported by the evidence; (2) *the standard instruction did not adequately cover the theory of defense*; (3) and the special instruction is a correct statement of the law and is not misleading or confusing. *Wheeler v. State*, 4 So. 3d 599, 605 (Fla. 2009) (emphasis added).

In denying Petitioner's claim, the state circuit court succinctly wrote: "This claim fails to establish any basis for relief." [ECF 11-5, p. 13]. Because the Third District Court of Appeal *per curiam* affirmed that decision without a reasoned opinion, that succinct analysis is presumptively the reasoning of the highest state court. *See Wilson*, 138 S. Ct. at 1192-94. Consequently, § 2254(d)'s deferential standard applies. *See, e.g.*, *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

However, when there is no reasoned state court opinion to "look through," which is the case here, the Supreme Court indicated *Richter*'s "could have supported" standard controls. *See Wilson*, 138 S. Ct. at 1195-96. Under that framework, a habeas court must determine "what arguments or theories supported, or could have supported, the state-court decision, and then ask whether it is possible

fairminded jurists could disagree." *See Richter*, 562 U.S. at 102. Therefore, while §

2254(d) still applies, the instant claim is reviewed under the *Richter* framework.

The Third District Court of Appeal likely found Respondent's answer brief

convincing. In that proceeding, Respondent argued that trial counsel "cannot be

deemed deficient for not requesting the alternative instructions *when the issue is*

*adequately covered* by the standard jury instructions." [ECF 11-5, p. 134] (quoting

*Gonzalez v. State*, 990 So. 2d 1017, 1028 Fla. 2008) (emphasis added). The record

confirms that the trial court instructed the jury on justifiable homicide, which

provides that homicide is excusable "when the killing occurs by accident and

misfortune in the heat of passion, upon any sudden and sufficient provocation."

[ECF 12-9, pp. 71-72].

In contrast, Counsel for Petitioner never addressed how the standard jury

instruction did not—by itself—adequately cover the defense at the state circuit court

level or in the initial brief. [ECF 11-3, p. 54], [ECF 11-5, pp. 95-96]. Notably, in the

Reply Brief before Florida's Third District Court of Appeal, Counsel for Petitioner

made an argument as to the adequacy of the standard jury instruction by relying upon

state law. [ECF 11-5, pp. 152-53]. Florida's Third District Court of Appeal likely

declined to consider this new argument as it was not raised in the state circuit court

or the initial brief. *See Kujawa v. State*, 405 So. 2d 251, 252 (Fla. 3d DCA 1981)

(relying upon *Shea v. State*, 167 So. 2d 767 (Fla. 3d DCA 1964)).

As this Court's review is limited to review of the record before the highest state court, Petitioner cannot raise that newly raised argument in this Court. *See Cullen*, 563 U.S. at 182 (reiterating that the record before the state court is the record before a federal court when § 2254(d) applies).

Therefore, without any argument addressing the underlying issue (*i.e.*, whether the standard jury instructions adequately covered the defense), the Third District Court of Appeal's silent decision could have concluded that there was no deficiency apparent on the face of the pleadings. *See, e.g.*, *Boyd*, 697 F.3d at 1333 (holding conclusory or facially deficient allegations did not satisfy deficiency or prejudice prongs or satisfy § 2254(d)). Similarly, without such an argument, the Third District Court of Appeal could have concluded that Petitioner failed to articulate a reasonable probability of a different outcome. *See id.* Because neither conclusion would have been contrary to or an unreasonable application of clearly established federal law, *see Boyd*, 697 F.3d at 1333, this claim should be denied.

I. <u>Ground Seventeen</u>

In ground seventeen, Petitioner claims trial counsel was ineffective for failing to file a motion to suppress his custodial statements. [ECF 1, p. 43-44]. In support, Petitioner asserts that officers prevented him from marking "no" on a form waiving his *Miranda* rights and that he spoke with police while still feeling the effects of drugs. [*Id.*]. By speaking with officers while still under the influence, Petitioner

asserts it caused him to provide varying versions of events, giving the impression that he was untruthful. [*Id.*].

Respondent contends that this Court's review of this claim is bound by credibility findings made in a postconviction evidentiary hearing. [ECF 11, pp. 73-74]. With respect to the pertinent credibility findings, as Respondent argues, the state circuit court found Petitioner never advised his trial counsel of any alleged *Miranda* violation, and that law enforcement did not act improperly. [*Id.* p. 73]. With those facts, according to Respondent, trial counsel was not ineffective for failing to argue a meritless motion to suppress. [*Id.* pp. 73-74].

The state circuit court observed that trial counsel did not recall the specifics of several topics. [ECF 11-5, pp. 10-11]. It also observed that trial counsel had no recollection that Petitioner attempted to invoke his right to counsel or that officers precluded him from invoking his right to counsel. [ECF 11-5, pp. 10-11].

Ultimately, after hearing additional testimony from detectives and Petitioner, the state circuit court found that trial counsel had "no good faith basis upon which to file a motion to suppress" as the evidence to file one did not exist. [*Id.* p. 12]. The state circuit court explicitly determined Petitioner's version of events were not credible, making his custodial statements voluntary. [*Id.*].

42

Pursuant to 28 U.S.C. § 2254(e)(1), factual determinations resolved by a state court are presumptively correct unless rebutted by clear and convincing evidence. *Maharaj v. Sec'y, Fla. Dep't of Corr.*, 432 F. 3d 1292, 1315 (11th Cir. 2005).

To rebut these findings, Petitioner asserts that he was "about to mark 'NO'" on the *Miranda* Warning form where one must express whether they are willing to answer questions without an attorney present. [*Id.* p. 44]. The *Miranda* Warning form includes a slight marking on that line of the form. [ECF 11-4, p. 319]. Notwithstanding, it cannot be said that the form alone constitutes clear and convincing evidence capable of rebutting the correctness of the state circuit court's findings.

Because this Court must accept the state's credibility finding that there was "no good faith basis upon which to file a motion to suppress," trial counsel was not ineffective. *See, e.g.*, *United States v. Stewart*, 388 F.3d 1079, 1085 (11th Cir. 2004) (concluding counsel cannot be ineffective for filing a meritless suppression motion). Accordingly, because the claim cannot prevail on *de novo* review, this claim should be denied. *See Trepal*, 684 F.3d at 1109-10 (holding courts need not resolve whether § 2254(d) applies when *de novo* review shows a denial is appropriate).

J. Ground Eighteen

In ground eighteen, Petitioner claims that trial counsel was ineffective for not cross-examining Ms. Isabelle Congote. [ECF 1, pp. 45-46]. He submits that her

43

inculpatory testimony, recounting Petitioner's confession in her home, would have been impeached had trial counsel relied upon her previous sworn statements. [*Id.*]. He also asserts that his heat of passion theory of the case would have been supported had trial counsel cross-examined her.

After an evidentiary hearing, the state circuit court found that trial counsel's decision not to cross-examine Ms. Congote was the result of a strategic decision. [ECF 11-5, pp. 13-14]. As trial counsel testified at the postconviction evidentiary hearing, and as the state circuit court found, Ms. Congote provided inculpatory and exculpatory testimony and nothing more could be gained by way of cross-examination. [ECF 13-1, p. 104]. Although Ms. Congote testified that Petitioner admitted to choking the victim, her testimony also included a version of the altercation. [ECF 11-5, p. 14]. In that version of events, the victim attacked Petitioner first, the two had a "mutual combat," and Petitioner inadvertently killed her during the altercation. [*Id.*]

Pursuant to 28 U.S.C. § 2254(e)(1), the state circuit court's findings are entitled to deference that they are correct and can only be rebutted with clear and convincing evidence that they are wrong. Here, the relevant finding is that trial counsel determined that there was a strategic decision to not cross-examine Ms. Congote. [ECF 11-5, p. 13]. *See also Babb v. Crosby*, 197 F. App'x 885, 888 (11th

Cir. 2006) (evaluating a strategic decision as a factual finding subject to the clear and convincing evidence standard set forth in § 2254(e)).

Petitioner has not adequately explained how the finding on trial counsel's decision was incorrect. [ECF 1, pp. 45-46]. Even if Ms. Congote previously made inconsistent statements, as Petitioner submits, it is unclear what more could have been gained with cross-examination. [ECF 1, pp. 45-46]; [ECF 13-1, p. 84].

To illustrate, trial counsel reminded the jury that Ms. Congote was attending to her children and was "in and out" of the room during Petitioner's confession in order to diminish her credibility on the more inculpatory details of her testimony. [ECF 12-9, pp. 33-34]. As trial counsel explained at the postconviction hearing, she did not view Ms. Congote as the most damaging witness. [ECF 13-1, pp. 84-85]. Because Petitioner cannot rebut the correctness of the state court's findings with clear and convincing evidence, this Court must assume the decision was part of a strategic decision. 28 U.S.C. § 2254(e)(1).

Additionally, because the Third District Court of Appeal *per curiam* affirmed the state circuit court's denial without a reasoned opinion, § 2254(d)'s deferential standard applies. The state circuit court's findings are presumed to be the adopted findings and reasoning of the Third District Court of Appeal. *See Wilson*, 138 S. Ct. at 1192-94.

"The decision as to whether to cross-examine a witness is a tactical one well within the discretion of a defense attorney." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001). As a reminder, courts do not evaluate counsel's performance through the distorting lens of hindsight but from the reasonableness of the decision at the time. *Strickland*, 466 U.S. at 689. Finally, there is also an additional layer of deference doubling the presumption of adequate performance. See *Rutherford*, 385 F.3d at 1309. Because the state circuit court found trial counsel made a strategic decision to not cross-examine, the denial of this claim was not contrary to or an unreasonable application of clearly established federal law. Therefore, this claim should be denied.

## X. Evidentiary Hearing

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Because the state record provides all pertinent facts, an evidentiary hearing in federal court is not needed. *See Schiro v. Landrigan*, 550 U.S. 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). *See also* 28 U.S.C. § 2254(e)(2) (stating federal courts "shall *not* hold an evidentiary hearing" "unless the application shows" circumstances that are inapplicable to the instant Petition) (emphasis added). After

46

all, a reasonable factfinder could still determine Petitioner is guilty of first-degree murder by clear and convincing evidence even assuming constitutional error transpired on any of Petitioner's claims. *See* 28 U.S.C. § 2254(e)(2).

## XI. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). See 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

After careful consideration of the record, this Court should deny a certificate of appealability. If Petitioner disagrees, he may bring his argument to the attention of the district judge in objections.

### XII. Conclusions and Recommendations

Based upon the foregoing it is recommended that:

1.      the federal habeas petition be DENIED;

2.      an evidentiary hearing be DENIED;

3.      a certificate of appealability NOT ISSUE; and,

4.      the case CLOSED.

Objections to this report may be filed with the district judge within fourteen (14) days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

SIGNED this 8th day of July, 2020.


_____
UNITED STATES MAGISTRATE JUDGE

cc:    Aubrey Quinton Webb
Law Offices of Aubrey Webb, P.A.
55 Merrick Way, Suite 212
Coral Gables, FL 33134
305-461-1116
Fax: 305-461-6446
Email: breywebb@yahoo.com

Noticing 2254 SAG Miami-Dade/Monroe
Email: CrimAppMIA@MyFloridaLegal.com

Michael W. Mervine
Office of the Attorney General
Department of Legal Affairs
444 Brickell Avenue, Suite 650
Miami, FL 33131
(305) 377-5441
Fax: (305) 377-5655
Email: CrimAppMia@MyFloridaLegal.com